The next case this morning is 522-0100, People v. Turner. Arguing for the defendant appellant is John Vrafel. Arguing for the state appellee is Miles Kelleher. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. The appellant has 10 minutes. Good morning, counsel. Are you ready to proceed? Yes, your honor. Yes. Then we'll hear first from the appellant. Mr. Vrafel, please state your name for the record and you may proceed. May it please the court. My name is John Vrafel. I represent Justin Turner, the defendant appellant in this case. There are seven issues in this case and all of them are important, but I'm going to focus my prepared remarks on the reasonable doubt claims that we've raised in the briefs. But I would urge this court to jump in with any questions it might have immediately if it has any interest in talking about the other issues. I want to make sure that I'm using our limited time to the court's advantage. As for the reasonable doubt claim, well, this was a case of self-defense. And on its surface, it looks like a very complicated case. The briefs are very long. There are a lot of issues. But at its heart, it's actually a lot simpler, and that's because there are a lot of undisputed facts. So let me just quickly go through those undisputed facts, because they really help narrow the issue in this particular case. Justin Turner's minivan got stuck in the mud, and he walked from his minivan that was stuck in the mud onto the Grusak farm without a gun. He walked peacefully looking for a rope or a chain to get his minivan out of the mud. Counsel, why didn't he just walk up to the front door and knock and say, I need to borrow a rope or a chain? We don't have an answer to that question, Your Honor. And Mr. Grusak didn't – sorry, Mr. Turner didn't testify. But I think what's important is, ultimately, it was the state's burden to prove that a crime had occurred here. Couldn't a trier of fact conclude from the failure to do just that, manifest an intent that he was in the barn to steal? I'm not sure that you could infer that he intended to go into the barn to steal because when he was approached by Mr. Grusak, he was standing in an open field with nothing in his hands, and he had taken nothing from the barn. He was really looking for a rope and a chain. And when Mr. Grusak approached him, there was a rope and a chain right next to him, next to the truck. And ultimately, the police found a rope attached to his minivan that was, in fact, stuck in the mud. So all these facts are corroborated. The state doesn't contest that he was looking for a way to get his minivan out of the mud. But what we do have here is a trespasser. You don't contest that he was trespassing when he was there, do you? No, we don't, Your Honor. He was certainly trespassing when he entered onto the Grusak farm. But the question is, for this court to resolve, ultimately did the state prove beyond a reasonable doubt that he was not acting lawfully in self-defense, and or did they prove that he intended to kill Mr. Grusak, and or did the state prove that he intended, that he lacked the subjective belief that he needed to act in self-defense? And I do want to point out that it's undisputed. We discussed this at length in the brief, and the state does not dispute that Mr. Turner cannot be convicted of attempted first-degree murder if he had a subjective belief in the need to use self-defense. You need to use force in self-defense, even if that was objectively unreasonable. The subjective belief in the need to use force in self-defense negates the specific intent requirement of an intent to unlawfully kill, which is necessary to sustain a conviction for attempted first-degree murder. So that's also undisputed. The state, instead of arguing that issue, argues that Mr. Turner had formed an intent to commit an unlawful murder, and the facts just don't bear that out. Now I want to discuss Dillard in particular, because that's especially relevant to this case, and that gets to the heart of the state's argument that Mr. Grusak was acting reasonably. But Dillard says quite clearly that a landowner cannot threaten or use lethal force to terminate a mere trespass to their property unless that landowner believes that they're at risk of death or great bodily harm. And also Dillard says that before a landowner can use force, the landowner has to give the mere trespasser an opportunity to leave the property. Now it was the state's burden to trial, and it never presented any testimony whatsoever that Mr. Grusak asked Justin to leave the property. Instead, the state's evidence indicated that Mr. Grusak ran out in a hurry. He was very clearly concerned about the situation, but he didn't bother putting on any clothes. He was judged in boxers. He runs out, he points a gun directly at the mere trespasser to his property and says, sit down, stay here, we're calling the police. And at this point, the trespasser, Mr. Turner, is concerned. He's up, he's wandering around, he's moving back and forth, he's pacing. I think it's clear, I think it's reasonable to infer that this person who had a gun being pointed at him by somebody who seemed to be acting unreasonably by running out of their house and judge their boxers or underwear and not asking them why they were there or asking them to leave. This person's concerned. He says, you don't want to do this. I think this court should interpret those words as a plead from, as Mr. Turner pleading for his life and saying, please deescalate this situation. But instead of doing that at one point, and it's unclear when, but at one point while Justin's back is turned, Mr. Gruzak fires his gun. Now, at this point, there's no reason for, for Justin to understand that, that Mr. Gruzak was firing a warning shot, whatever that meant to Mr. Gruzak, his back was turned. He didn't know what was happening. And he had previously been dealing with somebody who had just pointed a gun at his chest and was in their boxers and acting in quite frankly, unreasonably. So at this point, the evidence bears out that Justin ran into the farm and one of the barns, and he had clearly been in that barn before, but had not taken anything out of it. He loaded the gun that Mr. Gruzak kept unloaded. And he took a ammunition from a box of assorted ammunition and chose number six birdshot. And then he fired one time at Mr. Gruzak who remained armed and in between him and the only exits to the property. Now under these facts and based on Dillard, we believe this court needs to vacate Mr. Turner's convictions for attempted first degree murder because Mr. Gruzak wasn't acting reasonably as a landowner threatening death or great bodily harm to a mere trespasser. It was objectively reasonable. Once Mr. Gruzak fired a shot while Mr. Turner's back was turned for Mr. Turner to believe that he was in danger of death or great bodily harm. And he subjectively believed that state's evidence doesn't disprove that. I think what's also important to remember here is that the law does not require somebody who is in danger of death or great bodily harm to act perfectly. It just requires them to act reasonably and a reasonable person could have concluded that they needed to do something at this point. Otherwise they might die. And for these reasons, we believe that state did not prove beyond a reasonable doubt that Justin did not subjectively develop a belief that he needed to use force and self   Gruzak's subjective belief was reasonable. We further think based on Dillard that this court can't find that Mr. Gruzak was legally privileged in threatening to use or using lethal force in defense of his property against a mere trespasser. So unless this court has a standard of review here, counsel, the standard of review for, for a reasonable doubt claim is reviewing the facts and, and drawing all inferences in favor of the state. But we believe even under that standard of review that this court has to reverse because all of the facts have to be reviewed, not just the facts that are convenient and helpful to the state. And when this court looks at all the facts, I think that no reasonable fact finder could have found that the state had proven its case beyond a reasonable doubt. The state argues that you forfeited the self-defense claim. How do you, how do you respond to that? Well, I'm quite frankly surprised that the state made that argument because it was raised in the answer. It was raised at trial. It was raised at the end of trial when it was unclear to trial counsel, whether the court had considered that affirmative defense. It was raised in the post trial motions. It was discussed at sentencing. And quite frankly, the state took the position itself in the lower court in response to successor counsel's motion for a new trial, that the defense of self-defense was adequately raised by trial counsel. Now, if you, if this court recalls, successor counsel argued that trial counsel was ineffective for failing to adequately raise that defense. The state came in and said, no, trial counsel definitely raised that defense at trial and adequately cross-examined all the witnesses to develop the evidence. So I don't think that there's any possible arguments to, and any merits to the state's argument that this has been forfeited. I just want to quickly touch on the claims of ineffective assistance of counsel, not to say that the other claims aren't important, but I want to highlight one particular aspect of the ineffective assistance of counsel report. Sheriff Suits police report that was generated after he had interviewed Harry, sorry, Mr. Gruszak at the hospital. And this is particularly important because in that, in that police report Sheriff Suits wrote that quote, Harry stated, he also fired his weapon at the unknown subject, but did not think he hit the subject. Harry stated that the unknown subject then got on his blue four-wheeler and took off. This statement was, was critical. It contradicts Harry's or Mr. Gruszak's testimony in two very important ways. It changes the entire sequence of events. And it suggests that there may never have been a warning shot, which, which was testified to by Mr. Gruszak. It may have actually been a shot at the defendant, which, which is what this police report seems to indicate. Now trial counsel knew this report existed. He set up the impeachment while questioning Mr. Gruszak, but then he never introduced the content. And that to be clear, that content could have come in through questioning Sheriff suits or through introducing the report itself during Sheriff suits testimony. If he, if he changed his, his recollection of what the report said, but, but that in particular is, is a pretty important piece of evidence that never came in and was never evaluated by the fact finder. And it only didn't come in because of trial counsel's failure to bring it in despite setting it up during his initial questioning of Mr. Gruszak. So I'm out of time. I'm happy to answer any questions this court may have now. I'm otherwise going to reserve the remainder of my time for rebuttal. Any questions, justice McKinney? No. Justice Barberis. No, thank you. Thank you, counsel. You'll have an opportunity for rebuttal. We'll now hear from the, the, I believe the state. Please state your name, counsel. Good morning, your honors counsel, Miles Kelleher on behalf of the people. May it please the court. All of defendant's claims are meritless. Defendant did not shoot the victim in self-defense, nor did defendant have an unreasonable belief in the need for self-defense. And the trial court never made such a finding. Now defendant is trying to rewrite the history of this case, but the record when viewed as a whole, clearly establishes that defendant was the aggressor at all times. He had a choice here from the beginning. As justice McHaney mentioned, he could have knocked on Harry's door, asked for help, or asked for to call a tow truck. But instead he chose to pursue an unlawful course of conduct. And he wasn't a mere trespasser, although he was trespassing. He was also a burglar. He was in the barn ahead of this time looking for something to steal. He was in Harry's truck at the time that he was first noticed. Now Harry goes out and confronts the defendant, but Harry tries to do it in a peaceful manner. Harry's not looking for trouble. He's not even feeling well that day. He didn't want any of this in the first place. So he tells defendant to stop. But instead of stopping, defendant approaches Harry in a menacing manner. And this makes Harry scared. Harry starts stepping backwards as defendant is stepping forward towards Harry. And then Harry starts making comments that Harry took as threatening and menacing. And Harry's becoming extremely scared about the situation. And then defendant starts making comments about the contents of the silver barn. And at that point, Harry realizes, hey, if defendant knows what's in the barn, he probably knows that that shotgun is in the barn. And this makes Harry extremely scared. And then defendant starts walking towards the silver barn. It was only at that point that Harry deems the situation so perilous that he fires a warning shot to try to keep defendant from approaching the barn. But it's significant. Harry wasn't trying to hurt defendant. He didn't fire the shot in the direction of defendant. He fired it off to the side. He fired it into the ground about 30 feet away from defendant. He wasn't trying to hurt defendant. But defendant continues to walk towards the barn. And once defendant enters the barn, Harry turns around and starts running. Harry is scared. And seconds later, defendant takes Harry's shotgun and shoots Harry as Harry is running away. So this is not a case of self-defense. The evidence refutes the notion that defendant was in imminent danger of harm. And if defendant had feared for his life, he wouldn't have stopped and taken a few puffs from his vape pen. And he wouldn't have turned his back against Harry as he's walking towards the barn. Those all support the notion that defendant wasn't afraid. Defendant relies on the case of Dillard, but that's a factually distinguishable case. In Dillard, the defendants were urinating behind a gas station and Dillard was actually shot in the arm at that point after being shot, Dillard shot back. And the appellate court found that the state had failed to disprove that defendant acted in self-defense. But that's a totally factually distinguishable situation from the case at bar. Here, defendant was not harmed in any way before he shot Harry. He wasn't shot in the arm like the defendant in Dillard. So this case is clearly factually distinguishable from Dillard and it doesn't support the notion that defendant was somehow justified in shooting Harry. This is a completely different situation where defendant shoots at Harry as Harry is running away. So, and I just wanna address the notion that defendant had an unreasonable belief in the need for self-defense. The defense draws that conclusion based on some cherry pick comments of the trial court that was made during the sentencing hearing. But when you look at the trial court's comments as a whole, it's clear that that's not what the trial court found. The trial court found that defendant was, this was an unjustified shooting. And if there's any doubt, it's cleared up by the trial court's own comments where he says, I believe you are lucky not to be facing a first degree murder charge today. So the trial court was recognizing how close Harry came to actually dying in this case. And had Harry actually died, defendant would be facing a first degree murder charge, not a second degree murder. So that argument is completely belied by the record. It's an interpretation that the defense makes that defies an objective common sense reading of the trial court's comments. Counsel, you argue in your brief that there was sufficient evidence to disprove each element of claimed self-defense, even if it's not forfeited. Would you address that please? Yes, Your Honor. First of all, the evidence refutes that defendant was in imminent danger of harm here. All the state had to do was refute one of the elements of self-defense. And here the state refuted all of them. First of all, defendant was the aggressor here. So as long as the evidence demonstrates that defendant was the aggressor, that's sufficient to refute the whole notion that defendant acted in self-defense. And again, the standard of review here is viewing the evidence in the light most favorable to the prosecution. Only at that point, the court asked whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. And here there's an abundant evidence that disproves the notion that defendant was acting in self-defense. And that's based on defendant's aggressive behavior towards Harry where defendant is stepping forward, Harry is stepping backwards, defendant is making menacing, threatening comments. Defendant approaches the barn where the- Or some of those threatening comments. Harry testified that defendant was saying things like, you don't want to do this. I mean, it really didn't make, they may not have been sensible comments, but Harry testified that he took him as threatening and menacing. And even if you just look at the actions alone without the comments, you have defendant approaching Harry, Harry stepping backwards and Harry trying to maintain about 30 feet distance because he doesn't, he's afraid of defendant. He doesn't know what defendant's gonna do. And then the situation only gets worse once defendant reveals that he's been inside the barn and where Harry keeps the shotgun. So a trial, a rational trial of fact could easily look at this situation, the totality of the evidence and realize that the state proved beyond a reasonable doubt that defendant was not acting in self-defense. And also just the fact that- It was a bench trial, so Judge Lieberman acting as the trial court was in fact the trial of fact, is that correct? Yes, your honor. And a rational trial of fact. And the fact that Harry is running away before he's even shot and at the time he shot is further evidence that this was an unjustified shooting. And the location of the shotgun pellets are on, Harry is turned to the side. So shotgun pellets go all the way up and down defending, I'm sorry, Harry's body from the ear all the way down through his midsection to his leg. One even penetrates into one of his kidneys. So there is abundant evidence here that this was an unjustified shooting. And when the court applies the standard of review that's required by Jackson versus Virginia, this court must view the evidence in the light most favorable to the prosecution. And here, this was not, the defense tries to suggest in other parts of his brief that this was somehow mutual combat or something like this. Harry wasn't looking for a fight here. Harry was just trying to basically hold defendant at bay until the police came. And the first thing he told his wife was call the police. That's why Harry wanted to plead. Harry wasn't some vigilante that wanted to, you know. Your time is up counsel. Any other questions from the court, Justice McCain? No questions. Justice Barberis? None, thank you. Any other final points you want to make counsel? Just for all of these reasons, as well as those set forth in our brief, people respectfully request that this honorable court affirm defendant's convictions and sentences. Thank you. Thank you. Rebuttal? Thank you, Your Honor. I want to be clear. We have sympathy. Mr. Turner has sympathy for Mr. Gruzak in this case. Nobody wanted this to happen. And we don't doubt that Mr. Gruzak was scared himself. But the state's evidence that Mr. Turner was the aggressor rests entirely on Mr. Gruzak's state of mind and his own interpretation of the comments of the man who was on the other side of his gun. It wasn't unreasonable for Mr. Turner to say, hey, wait, you don't want to do this. Please don't do this when somebody was pointing a gun at him. And it was not unreasonable for Mr. Turner to try to think about ways to deescalate the situation. Just no, those ever worked. And while he was turning, when he turned his back, Mr. Gruzak shot his gun. Now, I want to be clear, that shot, that warning shot is not exactly clear how it happened. His wife, Zinnia, testifies that it was in the ground, that she didn't see it, and that it was up in the air. And then we have the statement in Sheriff Suit's report that there was a shot at Mr. Turner. Now, I'm not, you know, the evidence, the evidence viewed in the light most favorable to the state would say that there was a warning shot, but we know that it was a shot while Justin's back was turned, so he simply didn't know that it had happened. Now, the state's distinction with regards to Dillard is really a distinction without significance. It says that in Dillard, the landowner, or the agent of the landowner, as it may be in that case, fired and struck the mere trespasser. And in here, the landowner fired but did not strike the trespasser. And therefore, the defendant in Dillard was privileged in returning fire, and the defendant in this case was not. That's a distinction without meaning. The fact of the matter is, Justin couldn't have known that another shot wasn't coming his way. And at that point, he had a reasonable basis to return fire. Now, he didn't fire first. He simply returned fire. I do want to emphasize that point. The state makes... How do you address the fact that he shot the man as he was running away? It's, I think, unclear from the record whether he was running away. And it is clear from the record that he was still armed and still very much dangerous, and he had just shot at Justin. So, I think it wasn't unreasonable for Justin to think that here's this person who has a gun, who's still there, who just shot at me. I need to get away. How do I do that? He was clearly close enough that he could shoot him with a shotgun, a 20-gauge shotgun loaded with birdshot. So, I would say that there was a person in close proximity with a gun who had just fired at Justin. It's... I don't... The question is not whether Justin had acted perfectly. It's whether he had acted reasonably under the circumstances, and more importantly, whether he had formed a subjective intent to use force in self-defense as opposed to the criminal intent to unlawfully kill Harry. And I don't think this court can ignore the other facts that happened after the shooting, the fact that Justin did, in fact, flee the scene, that he did abandon the shotgun, with more birdshot, because he, with his... I assume his military training and experience knew that birdshot wasn't likely to have killed Mr. Gruszak in the first place. I don't think he ever... I don't think the state proved beyond a reasonable doubt that he had acted with the intent to kill. But again, even if he did, he was legally justified in doing so in self-defense under these very unique circumstances. I mean, Dillard was a 1970s case. We haven't seen another case like this until today. This really doesn't come up all that often. This... Mr. Turner definitely was a trespasser. We don't contest that. The state does seem to claim that he was more than a trespasser, that he was a burglar. But the state never proved a burglary in this case. And mere entry into a farm building is not a burglary unless it's accompanied by an intent to commit a felony. And here there was no... Did he take the shotgun out of the barn? Well, the shotgun... Taking the shotgun out of the barn is still not a felony. And an old rusty shotgun, again, used in this particular circumstance under the necessity of the situation is certainly not a felony. So I don't think... And what we're talking about with Mr. Gruzak's initial confrontation was the initial entry, not the entry in to get the shotgun to defend himself. That's what the state's argument is. Didn't he also take the four-wheeler? He did. He did. That was after... Again, that was after the shooting had occurred. I think what the state is arguing is that Mr. Gruzak was reasonable in running out and pointing a gun at the defendant when he first entered on the property. But what he saw was a man standing in an open field with nothing in his hands, and he nevertheless pointed his gun directly at this person and never asked why this person was there or told this person to leave. And now I think it's probably important but somewhat relevant to remember we have these open fields doctrines that allow even the police to enter on to land. We're not talking about an entry to the home. And to answer... Your time is up. Any points you want to make to wrap up? No, I just think I want to emphasize that in this case, the evidence did not establish proof beyond a reasonable doubt that Mr. Turner was guilty of the crimes charged. But even if this court does not agree, I would urge this court to look very closely at the other issues in the brief because they are all very important and we just don't have the time to discuss them all here. Any other questions, Justice McCain? No, thank you. Justice Barberis? No. Thank you, counsel. The court will take the matter